## BELT v. ST. LOUIS–SAN FRANCISCO RY. CO.

### No. 4361.

United States Court of Appeals
Tenth Circuit.

Feb. 23, 1952.

Rehearing Denied March 20, 1952.

Roy Paul, Durant, Okl., for appellant.

Ben Franklin, Oklahoma City, Okl. (Satterfield, Franklin & Harmon, Oklahoma City, Okl., and E. G. Nahler, St. Louis, Mo., on the brief), for appellee.

Before BRATTON, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

M. Lee Belt, individually and as administratrix of the estate of her deceased husband, Alvin R. Belt, brought this action in the District Court of Bryan County, Oklahoma, against the St. Louis-San Francisco Railway Company to recover damages for injuries to, and resulting death of, her husband, allegedly caused by the negligent acts of the Railway Company in the operation of its trains.

The complaint sets out two separate and distinct acts of negligence. First, it is alleged that while the deceased was fishing

from a bridge of the defendant, a passing train of the company carelessly and negligently struck him, causing serious injuries and excruciating pain; and second, that shortly after the deceased had been injured and while lying prostrate on the bridge immediately adjacent to the track, a second train was moved past the deceased, causing "shock and excruciating pain." Plaintiff alleges that the negligence of the defendant in the operation of both trains was the proximate cause of the injuries and resulting death of the deceased, and prayed that the estate of the deceased be awarded damages in the sum of $30,000 for pain and suffering, together with costs of hospital and funeral expenses in the sum of $900.80; and that she, individually, be awarded damages in the sum of $73,800.00 for the wrongful death of her husband.

The cause was removed to the United States District Court for the Eastern District of Oklahoma because of diversity of citizenship and requisite amount in controversy. By answer, the Railroad Company admitted the injury to, and death of, the plaintiff's decedent, but denied any act of negligence on its part and pleaded primary and contributory negligence on the part of the decedent.

Overruling a motion of the defendant for a directed verdict, the trial court submitted the case to the jury, painstakingly instructing it that two separate and distinct acts of negligence were in issue. One, the negligence of the Railroad Company in the operation of the passenger train which first struck the decedent; and, two, the operation of its freight train across the bridge a short time later. The jury was instructed that if it found that the defendant was guilty of negligence in the operation of either train and that such negligence was the proximate cause of decedent's injuries and subsequent death, it could award two items of damages, one for the pain and suffering of the decedent and the other for his wrongful death; and, that it should, if it found for the plaintiff, separate the item of damages awarded in its form of verdict.

By answer to special interrogatories, the jury found that the defendant railroad was negligent in the operation of its first train which struck the decedent and that the decedent was guilty of contributory negligence. But, a general verdict was returned in favor of the plaintiff, awarding damages in the sum of $5,000 for "pain and suffering" and $900.00 for hospital and funeral expenses. Thereafter, on motion of the defendant, the court entered judgment for the defendant Railway Company notwithstanding the jury's verdict, and plaintiff has appealed.

It is clear from the answer to the interrogatories and the court's instructions, that the jury's verdict is based solely upon the negligence of the appellee railroad in moving its second train past the deceased after he was injured.

In presenting its motion for a directed verdict, the appellee contended, and the trial court was apparently of the view, that the jury's verdict should be set aside on the grounds that there was insufficient evidence to show a proximate causal connection between the death of the decedent and the moving of the second train.

The attending physician who testified on trial concerning the extent of decedent's injuries and the cause of death was unable to say with any degree of certainty or probability that the negligent passing of the second train contributed to his death. It may be conceded, therefore, that under Cohenour v. Smart, Okl., 240 P.2d 91, the evidence is insufficient to support an award of damages for the alleged wrongful death of the decedent. See also Annotation in 134 A.L.R. 516. But, the damages awarded were not for the wrongful death of the decedent. Indeed by its verdict the jury necessarily found that death did not result from the second negligent act. The verdict was expressly limited to damages for "pain and suffering," a compensable wrong, separate and distinct from the claim for wrongful death. See Deep Rock Oil Corporation v. Sheridan, 10 Cir., 173 F.2d 186; Baltimore Am. Ins. Company v. Cannon, 181 Okl. 244, 73 P.2d 167; St. Louis & S. F. Ry. Co. v. Goode, 42 Okl. 784, 142 P. 1185, L.R.A. 1915E, 1141.

The second train was moved past the decedent over the strenuous objections of relatives and friends, and in disobedience of

a call from the appellee's dispatcher "to hold that train until the boy's body was removed from that bridge." When the second train started by the decedent he was lying immediately adjacent to the track seriously injured, but fully conscious. The passing of the train over the trestle or bridge caused considerable noise and vibration. The brother of the deceased stood at his head with one leg across his arms and shoulders and an arm across his knees to prevent the decedent from "lunging" under the moving train. While the train was passing, the decedent was "very restless and attempted to move and get up." Sometime before the entire train of 25 to 30 cars had passed he lapsed into unconsciousness.

The attending physician testified that when the decedent was brought to the hospital he was unconscious; that he had a fracture involving the right shoulder and fractures of the lower ribs on both sides; that he had a severe contusion and abrasion of his back and that he was in shock. When asked whether in the circumstances shown, the moving of the second train would cause shock, the physician stated "it would be a contributing factor of increasing shock." When on cross-examination he was asked if the moving of the second train would have any effect if the decedent was already in a state of shock, he answered "I think it would," and explained that it would increase the severity of the shock. We think this evidence entirely sufficient to support a finding of negligence in the operation of the second train, and under the Oklahoma rule, Cohenour v. Smart, supra, to show a causal connection between such act of negligence and the state of shock described by the physician. It follows that the verdict of the jury must be upheld if the state of shock described on this record can be said to be a compensable injury.

Appellee took the position in the trial court, and has not abandoned it here, to the effect that mere shock is not compensable as pain and suffering under applicable Oklahoma law.

Oklahoma courts are committed to the rule that "No recovery can be had for mental pain and anguish, which is not produced by, connected with, or the result of, some physical suffering or injury, to the person enduring the mental anguish." St. Louis & San Francisco Ry. Co. v. Keiffer, 48 Okl. 434, 150 P. 1026. In other words, Oklahoma law does not compensate for mental anguish or disturbance alone—it must be a part of the physical suffering and inseparable therefrom, as where the mental anguish is superinduced by physical hunger pains. See Thompson v. Minnis, 201 Okl. 154, 202 P.2d 981.

The courts generally draw a line between the purely physiological and the psychological, the corporeal and the psychical. Emden v. Vitz, 88 Cal.App.2d 313, 198 P.2d 696; Kelly v. Lowney & Williams, 113 Mont. 385, 126 P.2d 486; Cherry v. General Petroleum Corp., 172 Wash. 688, 21 P. 2d 520; Maynard v. Oregon R. Co., 43 Or. 63, 72 P. 590. And, the majority of the courts compensate for bodily injuries produced by or resulting from mental disturbances, although unaccompanied by any physical impact or concussion. In such cases, the right to recover is dependent upon the nature of the results rather than the nature of the tortious conduct. Emden v. Vitz, 88 Cal.App.2d 313, 198 P.2d 696 and cases cited therein; Taylor v. Pole, 16 Cal. 2d 668, 107 P.2d 614; Frazee v. Western Dairy, 182 Wash. 578, 47 P.2d 1037; 52 Amer.Jur. Torts, Sections 45 and 55.

When asked by the trial court to define the word "shock" as used in connection with the appellant's decedent, the attending physician stated: "An individual goes into shock, we have two forms, one is a misnomer but it is called hemorrhage shock, a cerebial anemia or lack of blood to the vital centers in the brain; and, the other form of shock is the result of injury and its effect on the brain. And the effect is very similar as far as the function of the vital centers and control of the various organs in the body are concerned."

It is thus clear that the shock which the physician testified as having been increased by the second negligent act of the appellee was a compensable physical injury under Oklahoma law, and not a mere mental or emotional disturbance. The verdict of the jury for pain and suffering, being

based upon this injury, is supported by the evidence and must stand.

The case is reversed and remanded with directions to enter judgment for the appellant in accordance with the jury's verdict.